1

2

3

4

5

6

7

8               **IN THE UNITED STATES DISTRICT COURT**

9               **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   MICHELLE A. MARTIN,                          No.  2:16-cv-0860-MCE-CMK

12                  Plaintiff,

13          vs.                                    <u>FINDINGS AND RECOMMENDATION</u>

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                    Defendant.
16   _____/

17          Plaintiff, who is proceeding with retained counsel, brings this action for judicial

18   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

19   Pending before the court are plaintiff's motion for summary judgment (Doc. 19) and defendant's

20   cross-motion for summary judgment (Doc. 24).

21                          **I.  PROCEDURAL HISTORY**[1]

22          Plaintiff applied for social security benefits protectively on April 30, 2012,

23   alleging an onset of disability on August 1, 2011, due to chronic low back pain, depression,

24   _____

25          [1]  Because the parties are familiar with the factual background of this case, including
     plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The
26   facts related to plaintiff's impairments and medical history will be addressed insofar as they are
     relevant to the issues presented by the parties' respective motions.

                                              1

anxiety, bipolar, neck pain, pain and numbness in upper and lower extremities, headaches,

disorders of back, affective mood disorders, planter fasciitis (Certified administrative record

("CAR") 120, 142-44, 172-73). Plaintiff's claim was denied initially and upon reconsideration.

Plaintiff requested an administrative hearing, which was held on September 11, 2014, before

Administrative Law Judge ("ALJ") Peter F. Belli. In an October 20, 2014, decision, the ALJ

concluded that plaintiff is not disabled[2] based on the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since August 1, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

---

[2]       Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

3. The claimant has the following severe impairments: degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, degenerative disc disease of the thoracic spine, carpal tunnel syndrome (CTS), obesity, early stages of osteoporosis, planter fasciitis and calcaneal spurs in both feet, depressive disorder, bipolar disorder and anxiety disorder. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can lift, carry, push and/or pull 20 pounds occasionally and ten pounds frequently. She can sit for eight hours in an eight-hour work day, but needs a sit/stand option at will at the workstation. She can sit 30-to-40 minutes at a time. She can stand and walk six hours in an eight-hour workday with normal breaks, but is precluded from prolonged walking or standing and must be permitted to change positions every 20-to-30 minutes. She is precluded from climbing ladders, ropes and scaffolds. She can occasionally stoop, crouch, crawl and kneel. She can frequently perform both gross and fine manipulation. She has the capacity to receive, understand, remember and carry out simple job instructions, can only occasionally perform detailed job instructions, and is precluded from performing complex job instructions. She can interact appropriately with the general public, coworkers and supervisors. She is capable of making work place judgments and can adjust to simple changes in the workplace.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 20, 1961 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Park 404, Subpart P, Appendix 2).

| | |
|---|---|
| 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)). |
| 11. | The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). |

(CAR 19-33). After the Appeals Council declined review on February 26, 2016, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III. DISCUSSION

Plaintiff argues the ALJ erred in five ways: (1) determining the severity of plaintiff's impairments; (2) rejecting the opinions of the treating and examining physicians; (3) rejecting plaintiff's testimony and lay witness statements; (4) formulating her Residual Functional Capacity (RFC); (5) and finding plaintiff can perform other work. Plaintiff is requesting this case be remanded for an award of benefits.

### A.    Step Two Severity

Plaintiff contends the ALJ erred in determining her fibromyalgia, headaches, myalgia and myositis, and chronic pain syndrome were not severe. She argues the ALJ erred in finding she does not have a medically determinable impairment of fibromyalgia, that her headaches are not severe, and by ignoring her diagnosis of myalgia and myositis as well as chronic pain syndrome. Defendant counters that plaintiff's diagnosis of possible fibromyalgia does not meet the requirements for finding a severe impairment, there is no evidence that plaintiff's headaches were a severe impairment, and that the ALJ did not err in not addressing the other diagnosis at step two especially as the ALJ took plaintiff's credible pain symptoms into account.

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).[3] In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir.

---

[3]      Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).  "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims,' and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996);  S.S.R. 85–28).  The plaintiff has the burden of providing medical evidence of signs, symptoms, and laboratory findings that show that his or her impairments are severe and are expected to last for a continuous period of twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); see also 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii).  An ALJ's finding that a claimant is not disabled at step two will be upheld where "there are no medical signs or laboratory findings to substantiate the existence of medically determinable physical or mental impairment." Ukolov, 420 F.3d at 1005.  The plaintiff's own statement of symptoms alone is insufficient.

In this case, the medical records do not provide an extensive history of fibromyalgia, nor are there any notations from an acceptable medical source regarding fibromyalgia.  Plaintiff was first diagnosed with possible fibromyalgia on May 14, 2013. (CAR 553).  Nurse Practitioner Linda Morrison-Ory noted that plaintiff's multiple aches and pains were consistent with fibromyalgia, after plaintiff apparently filled out a fibromyalgia handout.  FNP Morrison-Ory noted that plaintiff has "body pain bilaterally and above and below the umbilicus. She has some pain in the joints, some pain in the muscles.  She has a lot of other somatic symptoms that are consistent with fibromyalgia and/or depression."  (CAR 553).  On August 6, 2013,  FNP Morrison-Ory noted plaintiff was "not feeling fine multiple aches and pains, multiple locations, no swelling or redness; feeling fatigued; no fever; no chills...no headache."  (CAR 547-

58). The assessment was "bipolar disorder NOS; facet syndrome; arthritis" with no mention of fibromyalgia. (CAR 549).

On September 12, 2013, FNP Morrison-Ory's examination showed that plaintiff was having pain "in her low back, multiple [p]oints and in her muscles. She has multiple tender spots on palpitation, on upper and lower body, on right and left side of her body. She has fatigue and poor sleep secondary to her pain." (CAR 536). She was assessed with "bipolar disorder NOS; chronic reflux esophagitis; osteoarthritis; facet syndrome lumbar; bulging intervertebral disc thoracic spine; myalgia and myositis possible fibromyalgia; persistent insomnia." (CAR 538). On November 12, 2013, January 6, 2014, and February 6, 2014, FNP Morrison-Ory noted plaintiff's "fibromyalgia symptoms have flared since is no longer on Cymbalta." (CAR 513, 519, 525).[4] However, there is no indication as to what symptoms she was experiencing, with the exception of hot flashes, nor does there appear to have been any physical examination. On February 20, 2014, FNP Morrison-Ory noted as to plaintiff's history of present illness, that her

> fibromyalgia symptoms have flared since she is no longer on Cymbalta. Her symptoms are "brain fog" hot flashes may be due to the "broken thermometer" effect of fibromyalgia, calf muscle twitching, muscle pain on both sides of her body both above and below the waist line, burning pain in her left thumb when peeling an orange, Burning pain in right hand and arm-worse when brushing her hair, fatigue. Standing and walking are triggers that cause extreme pain in the middle and lower back, and the legs. Cannot stand longer than 10 minutes because she has pain in her right hip, lower back, and buttock and spasm in her mid back. She also gets shoulder and neck pain, heel and ankle pain. She gets numbness in both anterior thighs and occasionally down her left leg. She has to rest every ten minutes or so, lying down feels better than sitting. She is able to accomplish some household chores breaking them down into 10 minute segments.

(CAR 509). This exact history is repeated verbatim on a number of visits including March 17, 2014, May 21, 2014, June 24, 2014, and July 23, 2014. (CAR 505, 580, 583, 586). It is noted

---

[4] Of note, however, is plaintiff had a reaction to Cymbalta in April 2010. (CAR 418, 423). It appears that she stopped taking Cymbalta over three years before FNP Morrison-Ory determined that was the cause of plaintiff's fibromyalgia symptoms flaring.

that this is part of the history, not examination. As to the physical examination, plaintiff appeared alert, oriented, well nourished, and in no acute distress; musculoskeletal exam was not repeated. (CAR 511). FNP Morrison-Ory notes that Dr. Vagic is her supervising physician, but there is no indication that Dr. Vagic ever examined plaintiff, or that they worked closely. Nor are there medical records from any physician diagnosing or treating plaintiff for fibromyalgia. There is no referral to a rheumatologist or other specialist for the treatment of fibromyalgia.

SSR12-2p, which "provides guidance on how we develop evidence to establish that a person has a medically determinable impairment (MDI) of fibromyalgia (FM)," states that "[g]enerally, a person can establish that he or she has an MDI of FM by providing evidence from an acceptable medical source. A licensed physician (a medical or osteopathic doctor) is the only acceptable medical source who can provide such evidence. We cannot rely upon the physician's diagnosis alone. The evidence must document that the physician reviewed the person's medical history and conducted a physical exam." SSR 12-2p, 2012 WL 3104869. To establish a person has an MDI of FM, there has to be a diagnosis from a physician, which is not inconsistent with the other evidence in the record, and either of two sets of criteria must be met: either the 1990 American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia or the 1990 ACR Preliminary Diagnostic Criteria.

Under the former, an individual may be found to have an MDI of FM if he or she has all three: 1) history of widespread pain (in all quadrants of the body) that has lasted for at least three months, 2) at least 11 positive tender points,[5] and 3) other disorders were excluded. Under the latter, an individual may be found to have an MDI of FM if the individual has: 1) history of widespread pain, 2) repeated manifestations of six or more FM symptoms (especially manifestations of fatigue, cognitive or memory problems, waking unrefreshed, depression,

---

[5]     SSR 12-2p specifically provides for the examination which the physician should perform, including the amount of force to be used with digital palpitation. See SSR 12-2p (II.A.2.b).

anxiety disorder, or irritable bowel syndrome), and 3) other disorders were excluded. See SSR

12-2p, 2012 WL 3104869.

As to plaintiff's fibromyalgia, the ALJ determined:

> The claimant alleges disability due to fibromyalgia; however, the medical record does not support this diagnosis per SSR 12-2p. A review of the record indicates the claimant was diagnosed with fibromyalgia; however, there are no clinical examinations documenting at least eleven positive bilateral tender points (Exhibits B14F/3-14/17-20/23-25/34-36/49 and B18F/3-5/9-12). For these reasons, the undersigned finds that the claimant's diagnosis of fibromyalgia is not a medically determinable impairment per SSR 12-2p.

(CAR 22)

The ALJ's determination that there is a lack of clinical examinations is supported

by the evidence. While FNP Morrison-Ory noted that plaintiff had body pain bilaterally and

above and below the umbilicus and she had multiple tender spots on palpitation, there lacks

actual examination notes to document what plaintiff was experiencing. There is no indication as

to how many tender spots she had, nor do the records identify how those tender spots were

determined. SSR 12-2p provides for specific information as to where the tender spots are

located, how many tender spots are required, and the amount of force to be used with palpitation.

None of the medical records provide this information. The ALJ determined plaintiff failed to

meet the requirements for SSR 12-2p as there are no clinical examinations documenting at least

eleven tender points. The record supports this conclusion.

Plaintiff contends, however, that she meets the second prong of SSR 12-2p. She

has a history of widespread pain, six or more FM symptoms, and other disorders were excluded.

Specifically, she argues that her FM symptoms include fatigue, cognitive or memory problems

(fibro fog), depression, anxiety disorder, irritable bowel syndrom, muscle pain, headaches,

numbness, insomnia, constipation, and diarrhea. Defendant argues that FNP Morrison-Ory only

diagnosed plaintiff with possible fibromyalgia, that a diagnosis from a nurse practitioner does not

meet the qualifications of SSR 15-2p, and there is no indication in the records that the diagnostic

1  tests plaintiff states were ordered ruled out other disorders.

2         As set forth above, SSR 12-2p requires a physician to have diagnosed the claimant

3  with fibromyalgia based on the claimant's medical history and physical examination. Here, that

4  requirement was not met. While FNP Morrison-Ory appears to be plaintiff's primary care giver,

5  she is not a medical doctor. SSR 12-2p specifically states that the diagnosis of FM is to be made

6  by a physician. It further states that a diagnosis alone is insufficient, and requires the physician

7  to review the person's medical history and conduct a physical exam. There is no indication in the

8  record that Dr. Vagic or any other physician diagnosed plaintiff with fibromyalgia, examined

9  plaintiff directly for fibromyalgia, or even reviewed FNP Morrison-Ory's diagnosis. As stated

10 above, there was no referral to a rheumatologist or any other specialist, nor does it appear that

11 FNP Morrison-Ory consulted with Dr. Vagic, her supervising physician.[6]

12        Thus, whether or not it was error for the ALJ to have not evaluated plaintiff's

13 condition under the second prong of SSR 12-2p as to the six or more FM symptoms, any such

14 error would be harmless as the other requirements of SSR 12-2p have not been met. The Ninth

15 Circuit acknowledges it has "expressed different formulations of the harmless error rule

16 depending on the facts of the case and the error at issue." Molina v Astrue, 674 F.3d 1104, 1115

17 (9th Cir. 2012). However, the Court adheres "to the general principle that an ALJ's error is

18 harmless where it is 'inconsequential to the ultimate nondisability determination.'" Id. (citing

19 Carmickle v. Commissioner, 533 F.3d 1155, 1162 (9th Cir. 2008); Tommasetti v. Astrue, 533

20 F.3d 1035, 1038 (9th Cir. 2008); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.2006);

21 Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)). "In other words, in each case we

22 look at the record as a whole to determine whether the error alters the outcome of the case." Id.

23 ───────────────

24          [6]   FNP Morrison-Ory does not qualify as a medically acceptable treating source
   because she is a nurse practitioner, see 20 C.F.R. § 404.1513(d)(1), and the record does not show
   that she worked under a physician's close supervision, see Gomez v. Chater, 74 F.3d 967, 971
25 (9th Cir.1996) (holding that a nurse practitioner could be considered a medically acceptable
   source where she worked under a physician's close supervision such that she acted as the
26 physician's agent).

As plaintiff did not meet the requirements of SSR 12-2p, any error for the ALJ's failure to address the second prong to diagnose fibromyalgia was harmless.

As to plaintiff's headaches, the ALJ stated:

The claimant alleges disability secondary to headaches (Exhibit B3E). She endorsed headaches about five days per week (Exhibit B18F/9-12). While there is evidence she was prescribed Topamax, an antiepileptic also used to treatment [sic] migraine headaches and mood disorders, a review of the record indicates this medication was prescribed as a mood stabilizer (Exhibits B14F/3-6/15-16 and B17F/3-4). She has never sought urgent or emergent care for headache symptoms (Hearing Testimony). Based on her general lack of treatment for headache pain, the undersigned finds that the medical record does not support the claimant's allegations of frequent headaches and therefore finds this impairment to be nonsevere.

(CAR 22).

Plaintiff argues the ALJ's reasons for finding plaintiff's headaches not severe are not supported by substantial evidence or legal authority. She contends the medical records show she regularly suffers from headaches about 5 days a week, and was taking multiple medications for pain. She further contends she was specifically taking trazodone for her headaches, and she testified that the pain in her neck radiates up to her head.

Defendant counters that plaintiff fails to cite to any medically determinable diagnosis of headaches, only her complaints thereof. In addition, defendant argues that plaintiff did not receive any specialize treatment, and there is no indication that the medications were ineffective in alleviating her headaches. Further, plaintiff's citation to being prescribed Trazodone for headaches was to her own list of medications, not to any medical records wherein she was prescribed mediation specifically for headaches and the medical records indicate she was prescribed Trazodone for insomnia.

Defendant's arguments are well taken. As the ALJ determined, there are notations in the medical records that plaintiff complained about headaches. However, she did not specifically seek treatment for headaches, whether routine, urgent or emergent care. The ALJ also acknowledged she was prescribed Topamax, but the undersigned agrees with defendant's

argument that there is no indication that in the medical records that it was prescribed specifically for her headaches, nor that the medication she received were ineffective in alleviating her headaches. Therefore, the undersigned finds no error in the ALJ's determiantion that her headaches were non-severe, and she has failed to meet her burden to show otherwise.

Finally, as to myalgia, myositis, and/or chronic pain syndrom, the ALJ did not specifically address these possible diagnoses. Plaintiff contends she was diagnosed with these conditions and it was legal error for the ALJ to ignore medical evidence of disabling conditions. Defendant argues that the lack of any specific mention of these conditions did not materially undermine the ALJ's decision as the ALJ proceeded with the sequential analysis, recognized plaintiff's pain and took into account the credible pain complaints in the analysis.

The undersigned notes that the diagnosis of myalgia and myositis were noted as possible diagnosis, specifically as an alternative to the diagnosis of fibromyalgia. (CAR 538). Myalgia (which plaintiff states is the pain and tenderness in muscles) and myositis (which she states is the inflamation of muscle) do not appear to have been specifically treated. Similarly, the undersigned notes only one mention of a diagnosis of chronic pain syndrome. (CAR 559). Regardless, other than the possible diagnosis, plaintiff fails to show any functional limitations other than pain. As the defendant argues, the ALJ took into consideration plaintiff's pain impairment, as discussed below, and included plaintiff's pain he determined was credible in determining plaintiff's limitations. Thus, the failure to include these specific diagnosis in the step two analysis was harmless as it did not materially undermine the final decision. See Molina, 674 F.3d at 1115.

## B. Medical Opinions

Plaintiff argues the ALJ erred by failing to provide legally sufficient reasons for rejecting the opinions of her treating and examining physicians.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d

821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

professional, who has a greater opportunity to know and observe the patient as an individual,

than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

(9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

(9th Cir. 1990).

        In addition to considering its source, to evaluate whether the Commissioner

properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

uncontradicted opinion of a treating or examining medical professional only for "clear and

convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

While a treating professional's opinion generally is accorded superior weight, if it is contradicted

by an examining professional's opinion which is supported by different independent clinical

findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

without other evidence, is insufficient to reject the opinion of a treating or examining

professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

see also Magallanes, 881 F.2d at 751.

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

Plaintiff argues the ALJ erred in not accepting three medical opinions in full, Dr. Garewal, Dr. Kinnison, and Dr. Wong. Specifically, plaintiff contends the ALJ erred in rejecting Dr. Garewal's opinion as a whole and Dr. Kinnison's opinion that she can stand and walk four hours, by failing to give clear and convincing or legitimate reasons for so doing, and the reasons given lacked substantial evidence to support them. She contends the ALJ erred by failing to incorporate certain limitations Dr. Wong opined in the RFC, without providing any reasons for

1   rejecting the three limitations in Dr. Wong's opinion.

2         Defendant counters that the evidence plaintiff points to does not support her

3   argument, the medical records were consistent with the ALJ's RFC findings, her mild-to-

4   moderate limitations were accommodated in the RFC, and there were conflicting opinions in the

5   record. Defendant also argues that the ALJ properly executed his duty in resolving conflicts

6   within the medical records and opinions.

7         Dr. Garewal submitted a medical source statement as to plaintiff's mental

8   condition. He opined that plaintiff's abilities were poor in all categories. He stated she had poor

9   ability to understand and remember both detailed or complex instructions as well as very short

10   and simple instructions as she "cannot process mental issues." He stated she had poor ability to

11   carry out instructions, attend and concentrate, and work without supervision as she has "very

12   poor attention and concentration." He stated she had poor ability to interact with the public,

13   coworkers and supervisors as she is "alway[s] anxious, avoidant, get[s] intimidated, angry, gets

14   panicky." Finally he stated she has poor ability to adapt to changes in the workplace, but did not

15   provide a reason. This assessment was done after only one visit on March 10, 2014. (CAR 570-

16   71).

17         As to Dr. Garewal,[7] the ALJ stated:

18       Jagdeep Garewell, M.D., a treating psychiatrist, submitted a
        medical source statement dated May 2014. Dr. Garewell opined
19       the claimant cannot usefully perform or sustain any mental
        activities, including understanding and remembering instructions,
20       sustaining concentration and task persistence, interaction with
        others, and adapting to the workplace (Exhibit B16F). Dr.
21       Garewell's opinion is inconsistent with medical records, including
        his own treatment notes, which documented cooperative behavior,
22       good grooming, good eye contact, normal speech, normal thought
        process, normal thought content, fair insight, fair judgment and
23       mild-to-moderate difficulties with attention, concentration and
        memory (Exhibits B14F, B17F and B18F). As such, Dr.
24       Garewell's notes are wholly inconsistent with his opinion that the

25

26           [7]      It appears the ALJ's spelling of the doctor's name differs from the medical
  records.

claimant had poor abilities in all areas of mental functioning.
Accordingly, the undersigned accorded Dr. Garewell's opinion no
weight.

(CAR 30).

Dr. Kinnison performed a comprehensive interal medical evaluation of plaintiff on August 13, 2012. At that evaluation, plaintiff stated her chief complaints were neck pain, bilateral shoulder pain, low back pain, and foot pain. Dr. Kinnison's physical examination indicates that plaitniff "appears a markedly depressed female in no acute distress. She does not make eye contact. She is tearful through the history. She ambulated normally. She sits comfortably. She can get on and off the exam table without difficulties. She went from sitting to supine to sitting in a normal fashion." (CAR 431-32). Her coordination and gait are noted as normal. Dr. Kinnison diagnosed plaintiff with "1. Neck pain, most likely secondary to degerative arthritis. 2. Bilateral shoulder pain, etiology undetermined. 3. Low back pain, most likely secondary to degenerative arthritis. 4. Bilateral foot pain, etiology undetermined." (CAR 433-34). He assessed the plaintiff with the following limitations:

> At this time I believe the claimant's ability to stand and walk to be
> up to four hours daily, primarily limited by her low back pain and
> by her bilateral foot pain.
> Her sitting capacity is essentially unlimited.
> She does not use assistive devices.
> She can lift 20 pounds occasionally and 10 pounds frequently,
> limited by both neck, back, and shoulder dysfunction.
> Postural activities: I think she can climb frequently at her own rate.
> Her balance is unlimited. Her ability to stoop and crouch is limited
> to frequently by her low back pain. Crawling and kneeling are
> unlimited.
> Manipulative activities of reaching, handling, fingering, and
> feeling are normal bilaterally below about 130 degrees.
> I will place no environmental limitations upon her.

(CAR 434).

As to Dr. Kinnison, the ALJ stated:

> Dr. Kinnison opined the claimant can stand and walk up to four
> hours in an eight-hour workday; is unlimited in her ability to sit;
> does not require the use of an assistive device; can lift up to 20
> pounds occasionally and ten pounds frequently; can frequently
> climb, stoop and crouch; is unlimited in her ability to balance,
> crawl and kneel; can perform reaching, handling, finger and feeling

1  normally below about 130 degrees; and has no environmental
   limitations (Exhibit B5F).  The undersigned gives little weight to
2  Dr. Kinnison's opinion rearding the claimant's standing and
   walking limitations because they are overly restricted in light of the
3  image studies of record, lack of lumbar radiculopathy on EMG
   study, and clinical examinations documenting normal gait,
4  minimally reduced spinal range of motion and inact neurological
   function.  As such, the undersigned finds that the claimant can
5  stand and walk six hours in an eight-hour workday so long as she is
   allowed a sit/stand opinion at will.  The undersigned gives reduced
6  weight to Dr. Kinnison's opinion regarding the claimant's
   manipulative ability because it is inconsistent with EMG studies
7  showing minimal CTS.  As such, the undersigned finds that the
   claimant is limited to frequent gross and fine manipulation.  The
8  undersigned gives slightly reduced weight to Dr. Kinnison's
   remaining opinion because it is inconsistent with the cliamant's
9  lumbar diagnosis with slightly reduced range of motion and history
   of heel pain.  As such, the undersigned finds that the claimant can
10 only occasionally stoop, crouch, crawl and kneel, and cannot
   perform prolonged walking or standing more than 30 minutes at a
11 time. (Exhibits B1F, B2F, B5F, B11F, B12F, B14F, and B18F).

12 (CAR 29).

13     Dr. Wong performed a comprehensive psychiatric evaluation of plaintiff on

14 August 19, 2012.  Dr. Wong noted her chief complaint to be "depression longitudinal history."

15 (CAR 437).  The mental status examination showed plaitniff to be cooperative, was able to

16 express herself well, had no suicidal ideation, her affect was in full range, her mood was mildly

17 depressed, she was orientated in all spheres, and was fully coherent.  Her memory was entact; she

18 was able to recall 3 of 3 objects immediately and again after 5 minites.  She was able to perform

19 simple math, her digit span was five forward, she was able to spell, and complete a three-step

20 command with out difficulty.  Dr. Wong found her concentration was demonstratably intact and

21 sustained through out the interview.  Her insignt and judgment was fair.

22     Dr. Wong set forth the following function ability/medical source statement:

23     This is a woman with some depressive symptoms, much of which
       are driven by situational and environmental factors (her changes in
24     health).
       She is currenlty capable of managing her own funds without
25     psychiatric limitation.
       She is currenlty capable of performing simple and repetitive tasks
26     as well as detailed and complex tasks without psychiatric or

cognitive limitations. It should be noted that she is on certain medications that may have a limiting affect due to sedation but these would be medical factors. She also has other medical facts that could affect her taks performance.

At this time she is capable of accepting instructions and interacting with coworkers and the public without psychiatric or cognitive limitations. Once again, she may from time to time experience some sedation, which affects her ability to interact. Her inability to sleep is likely to affect her ability to take instructions as well. Her ability to perform work activities on a consistent basis without special or additional instructions is intact on a psychiatric basis. Her ability to maintain regular attendance in a workplace as well as complete a normal workday is intact wihout psychiatric limitation. Once again, she may have some health issues, some disturbances of sleep, as well as medications, which may affect these capacities. Her ability to deal with stress in the workplace is mildly reduced by her depression.

(CAR 440-41).

As to Dr. Wong, the ALJ stated:

Dr. Wong opined the claimant can perform simple and repetitive tasks as well as detailed and complex tasks without psychiatric or cognitive limitations; can accept instructions and interact with coworkers and the public without psychiatric or cognitive limitations; can perform work activities on a consistent basis without special or additional instructions; can maintain regular attendance in a workplace as well as complete a normal workday without psychiatric limitation; and is mildly limited in her ability to deal with stress in the workplace (Exhibit B6F). The undersigned gives reduced weight to Dr. Wong's opinion regarding the claimants's ability to perfrom detailed and complex tasks because it is inconsient with treatment notes documenting mild-to-moderate limitations in the claimant's attention, concentration and memory (Exhibit B17F). Based on these mental status findings in conjunction with the claimant's good daily activities and positive response to psychotropic medication, the undersigned finds that the claimant can only occasionally perform detailed tasks and is precluded from performing complex tasks. The undersigned gives great weight to Dr. Wong's remaining opinion because it is consistent with the medical record as a whole. Here, the claimant engaged in good social activities, including providing daycare for her minor grandchildren. She consistently exhibited cooperative behavior, good eye contact and friendly demeanor. These findings are consistent with Dr. Wong's finding that the claimant has no social functioning limitations. Based on the claimant's positive response to psychotropic medication and infrequent bouts of mood lability, the undersigned finds that the claimant is capable of making workplace judgments, but can adjust to only simple changes in the workplace (Exhibits B2F, B12F, B14F, B17F and

B18F).
(CAR 31).

At the outset, the undersigned notes the conflict between the two proffered psychiatric evaluations, Drs. Garewal and Wong. Where Dr. Garewal opined plaintiff was severely limited, Dr. Wong opined plaintiff was at worst mildly limited in her abilities. As these two opinions are conflicting, the ALJ was charged with resolving the conflict which he did. The ALJ specifically found Dr. Garewal's opinion too restrictive and unsupported; he found Dr. Wong's opinion not sufficiently restrictive and that the medical records supported limitations Dr. Wong did not find. The ALJ supported these decisions with citations to the record, which the undersigned finds are supportive of the ALJ's determination. As there were conflicting opinions, the ALJ was only required to provide specific and legitimate reasons for rejecting an opinion.

To the extent plaintiff argues the medical records do not support the ALJ's determination, the undersigned disagrees. While plaintiff points to some medical records wherein she was tearful, had anxiety, depression, abnormal affect, and a manic episode, there are also numerous records wherein she was alert, oriented, her affect was normal. (CAR 517, 523, 574, 576). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Orn. v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation marks omitted). Here, the ALJ's determination is supported by the evidence, and is not simply a substitution of his layman's opinion over the medical record as plaitniff's argues. Finally, plaintiff's contention that the ALJ erred in failing to include Dr. Wong's conjecture as to the possible effect of her medicaiton and sleep disturbance in the RFC is not persuasive. The ALJ did not reject Dr. Wong's medical opinion. Dr. Wong's summary of plaintiff's functioning abilitites included the possibility that she may have side-effects to the medication she is taking, including sedation, and her lack of sleep may impact her attendance. However, these are conjecture, not medical opinions, and the ALJ was not required to include these possible limitations in the RFC, especially where there is a lack of evidence supporting the conjecture.

19

As to Dr. Kinnison's opinion, plaintiff argues the ALJ erred in rejecting Dr. Kinnison's opinion that plaintiff could stand and walk up to four hours in an eight-hour workday. She contends that the image studies have consistently shown positive findings supportive of pain and an inability to stand/walk for any lenghth of time, clinical examinations support Dr. Kinnison's opinion, and plaintiff's fibromyalgia, myalgia/myositis and chronic pain syndrom are all capable of causing pain and difficulty with standing and walking. Defendant counters that the reasons the ALJ provided were legally sufficient, that the opinion is supported by the objective medical evidence, the RFC accommodated plaintiff's limitations as to standing and/or walking, and the opinion is further supported by the State agency consultants' opinions.

The undersigned agrees with defendant that the reasons provided were legally sufficient. Again, where the evidence could support alternative determination, the court must uphold the ALJ's determination. See Orn, 495 F.3d at 630. The objective medical evidence shows some disc bulging and degenerative changes, but none of it severe. The ALJ specifically discussed the clinical findings, noting that x-rays of her cervical spine revealed only mild degenerative changes, and MRI revealed moderate degenerative disc disease with no evidence of significant cord indentation, but the EMG showed no evidence of cervical radiculopathy and clinical examination revealed intact sensation, full strength, and only slightly reduced range of motion of the cervical spine. (CAR 25). Similarly, the image studies of plaintiff's back showed mild disc spurring and narrowing with a little bulging at L5-S1 and minimal encroachment of the thecal sac, but no focal herniations or disc protrusions. An MRI showed a little wedging at T6 with some spurring ad bulging at T6-T7, mild bulging at T3-T4 and T11-T12. But there was no evidence of frank disc herniation or nerve compression. In addition, an EMG study showed no evidence of lumbar radiculopathy. (CAR 25-26). In addition, the ALJ provided an alternative limitation to accommodate her heel pain by providing a necessary sit/stand at will option. Further, the ALJ did give the State agency doctors, Drs. Bell and Lee, opinions moderate weight. These doctors found plaintiff capable of standing and walking about six hours in an eight-hour

workday, which the ALJ found supported by the record, but determined plaintiff had additional

postural limitations the State agency doctors did not find. Specifically related to the standing and

walking ability, the ALJ stated:

> The undersigned gives significant weight to their opinions
> regarding the claimant's exertional limitations because it is
> consistent with the image studies of record and the clinical
> examinations documenting normal gait, comfortable sitting ability,
> generally intact sensation, full strength and lack of lumbar and
> cervical radiculopathy. As such the undersigned agrees that the
> claimant can perform light exertional activities. However, based
> on the claimant's obesity, foot and ankle impairments, and
> treatment for chronic pain, the undersigned finds that the claimant
> must be afforded a sit/stand option at will and is precluded from
> prolonged walking and prolonged standing."

(CAR 30). The undersigned finds these reasons and accommodations to be legally sufficient and

supported by the evidence.

## C. Credibility

Next, plaintiff contends the ALJ erred in rejecting the testimony of herself and her

daughter. She argues the reasons the ALJ gave for discounting her testimony were not clear and

convincing, and they lack substantial evidence to support them. Similarly, she contends that

because the ALJ rejected plaintiff's daughter's testimony only on the same basis as he rejected

plaintiff's testimony, the reasons given were not germane to her and are thus insufficient.

The Commissioner determines whether a disability applicant is credible, and the

court defers to the Commissioner's discretion if the Commissioner used the proper process and

provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit

credibility finding must be supported by specific, cogent reasons. See Brown-Hunter v. Colvin,

806 F.3d 487, 492 (9th Cir. 2015); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).

General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather,

the Commissioner must identify what testimony is not credible and what evidence undermines

the testimony. See id. Moreover, unless there is affirmative evidence in the record of

malingering, the ALJ's reasons for rejecting testimony as not credible must be "'specific, clear

and convincing'." See Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (quoting Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See

Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the "mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at

919.  The ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar.  See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

Here, the ALJ stated:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

The claimant has described daily activities which are not limited to the extent one would expect given the complaints of disabling symptoms and limitations.  She provided childcare for her minor grandchildren (Exhibit B2F/37-38).  With the use of analgesic medication, she can perform her daily activities (Exhibit B14F/37-39).  She can maintain her personal hygiene.  She can prepare simple microwavable meals (Hearing Testimony).

Although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and conservative in nature.  Here, the claimant's pain symptoms were effectively managed with mediation.  Moreover, she consistently denied medication side effects.  Her foot and ankles symptoms were conservatively treated with anti-inflammatory medication, orthotic inserts and support shoes.  She has never undergone surgery to address her physical impairments (Exhibits B1F, B2F, B11F, B12F, B14F, B18F, and Hearing Testimony).

The medical evidence does not support the claimant's allegations of disabling spinal or musculoskeletal symptoms.  Here, image studies of the claimant's spine and an EMG study of her upper and lower extremities do not support her allegations of radicular symptoms or disabling pain.  Moreover, clinical examinations documented only minimally reduced cervical and lumbar range of motion, full range of motion of her ankles and predominately intact neurological functioning (Exhibits B1F, B2F, B5F, B11F, F12F, B14F and B18F).

The claimant's mental symptoms are well managed with counseling and psychotropic medication.  While there is evidence she endorsed episodes of mood lability, she responded well to counseling, mood stabilizers and anxiolytic mediation (Exhibits

B14F, B17F and B18F). (CAR 28-29).

Plaintiff argues the ALJ's reasons are not supported by the evidence. She contends there is more than substantial objective medical evidence to supports her testimony, her daily activities are very limited and cause her pain, and her medical treatment was not effectively managed with medication and conservative treatment as she continually sought treatment for back and neck pain despite the pain medication she was on. She further argues her fibromyalgia, headaches and other impairments support her testimony regarding her pain and functional limitations.

Defendant counters that the reasons the ALJ articulated were sufficient. Defendant argues that the ALJ properly found that plaintiff responded favorably to medication and her pain was adequately controlled, her treatment was conservative with no side effects, the objective medical evidence conflicted with her allegations of disabling spinal and musculoskeletal symptoms, her mental health symptoms were adequately controlled, and the daily activities the ALJ relied on supported the determination that plaintiff's conditions were not as severe as she claimed. Defendant contends that the ALJ's reasons are supported by substantial evidence.

The undersigned finds the reasons the ALJ provided are sufficiently clear and convincing and supported by the evidence. Again, there are a variety of medical records which could support alternative interpretations. However, sufficient medical records support the ALJ's interpretation, which provide support for his credibility determination. The ALJ set forth the medical evidence he determined was unsupportive, and while there may have been additional medical evidence to support a different conclusion, there is substantial evidence to support the ALJ's determination. Specifically, plaintiff points to an x-ray done in April 2012, however, that x-ray showed only minimal degenerative changes, that the cervical vertebrae are intact and in alignment, some mild neural foraminal narrowing, with the impression of mild degenerative

changes noted in the cervical spine C3 through C6. (CAR 409). She then points to an MRI done in October 2013, wherein the findings indicate C2-3 and C3-4 were normal, mild disc degeneration at C4-5, normal disc level without disc degeneration or disc herniation at C5-6. (CAR 532). That same MRI does show moderate disc degeneration and disc bulging at C6-7, which "could be a cause of neck pain and cracking noises," but the there was no specific cord or nerve compression. (CAR 531-32). She points to an MRI done in April 2012, which showed "[w]edging of T6 body with some posterior spurring and bulging at T6-7," causing some encroachment on the anterior aspect of the thecal sac but no canal stenosis, mild bulging at T11-12 and T3-4, but the cord itself demonstrates normal signal. (CAR 410). She also points to a CT scan done January 2012 which indicates disc bulge and facet arthropathy at L5-S1 resulting in stenosis of the neural foramina, and minimal annular bulging at L3-4 and L4-5 without appreciable neural compromise. (CAR 412). Finally, she points to an MRI done in April 2012 which showed "[m]ild disc space narrowing with spurring and bulging posteriorly at L5-S1 causing minimal encroachment on the thecal sac." (CAR 411). Plaintiff argues that the objective medical evidence supports her subjective complaints. However, the ALJ considered these records, and determined the generally mild findings did not support her allegations. The undersigned finds this determination to be supported by the evidence.

In addition, the ALJ used other acceptable means of discounting the plaintiff's testimony, including her daily activities as well as successful and conservative treatment. As the defendant argues, plaintiff generally responded favorably to medication, which supported the ALJ's determination that her medication provided adequate control over plaintiff's pain. Similarly, plaintiff's daily activities, which notably limited, were not as restricted as one would expect for such debilitating limitations she claimed. As noted, the ALJ found she provided childcare for her grandchildren, performed her daily activities with the help of her medication, maintained her personal hygiene and prepared simple microwavable meals. To the extent the ALJ determined these activities were contrary to her allegations of disabling symptoms, the

ALJ's credibility determination is supported. "While a claimant need not 'vegetate in a dark room' in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where these activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of totally debilitating impairments. Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (quoting Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987)).

Where the credibility determination is reasonably supported by the evidence, that determination should not be disturbed on review. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). The undersigned finds the ALJ's credibility determination to be sufficiently clear and convincing, and supported by substantial evidence.

As to plaintiff's daughter's, the ALJ stated:

> As for the opinion evidence, Kaelene Scritchfield, the claimant's daughter, submitted a Third Party Adult Function Report dated July 2012. She corroborated the claimant's allegations regarding her limited ability to perform daily activities secondary to chronic pain (Exhibit B6E). Although Ms. Scritchfield's statements may be is [sic] sincere and well meaning, lay witnesses are not considered medical or vocational experts capable of determining whether the claimant is disabled (20 CFR 404.1527 and 416.927). Furthermore, her statements appear to be mere extensions of the claimant's own allegations (Hearing Testimony). Rephrasing or reassertion of the claimant's own allegations, in a different format, is not a basis for a finding of disability. For the same reasons the undersigned finds the claimant's allegations of disability are not consistent with the record, so too are the allegations made by Ms. Scritchfield found to be unpersuasive.

(CAR 29).

Plaintiff argues that the ALJ erred in this determination as well, as he failed to provide specific, cogent reasons for discrediting Ms. Scritchfield's testimony. However, as the defendant points out, the ALJ was not required to give specific, cogent reasons for discrediting this testimony. As set forth above, the ALJ may cite the same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar. See Valentine, 574

F.3d at 694.  Here, the statement from plaintiff's daughter did not add anything new to plaintiff's own testimony.  Accordingly, the ALJ did not err in finding the statements were unpersuasive for the same reasons he found plaintiff's statements not entirely credible.

### D.        Residual Functional Capacity

Plaintiff argues the ALJ erred in formulating her RFC.  She contends that the ALJ erroneously rejected the physicians' opinions, her own testimony and that of her daughter, and failed to include all of her limitations.

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").  Thus, residual functional capacity describes a person's exertional capabilities in light of his or her limitations.

As set forth above, the undersigned finds no error in the ALJ's treatment of the physicians' opinions or the credibility determination.  As there was no error, the ALJ did not err in not including the limitations he specifically rejected.  Plaintiff's argument that the ALJ erred in failing to include any of Dr. Garewal's opinion, or Dr. Kinnison's opinion that she was limited in standing/walking to 4 hours in an 8-hour work day, is therefore unpersuasive and the undersigned finds no error in the ALJ's RFC determination based on the medical records.

In addition, plaintiff argues that the ALJ erred in failing to include limitations as to her concentration, persistence, or pace.  She contends the ALJ determined at step three, that she was moderately limited in concentration, persistence, and pace but he erred in failing to include that limitation in the RFC.  Defendant counters that a limitation found at step three does not equate to a limitation at step four which must be included in the RFC.

"[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified

in the medical testimony." <u>Stubbs-Danielson</u>, 539 F.3d at 1174.  Here,  Dr. Wong specifically

opined that plaintiff was not limited in her ability to perform work on a consistent basis, maintain

regular attendance, or complete a normal workday.  (CAR 441).  The ALJ adopted Dr. Wong's

opinion, but gave it reduced weight to the extent Dr. Wong found plaintiff capable of performing

"detailed and complex tasks because it is inconsistent with treatment notes documenting mild-to-

moderate limitations in the claimant's attention, concentration and memory." (CAR 31).  The

ALJ found plaintiff able to only occasionally perform detailed tasks and precluded from

performing complex tasks.  (CAR 31).  The ALJ incorporated this limitation into the RFC,

finding plaintiff "has the capacity to receive, understand, remember and carry out simple job

instructions, can only occasionally perform detailed job instructions, and is precluded from

performing complex job instructions." (CAR 24).  Thus, plaintiff's contention that the ALJ failed

to incorporate his own finding that she has mild-to-moderate limitations in concentration,

persistence and pace is not supported by the evidence or the ALJ's opinion.

As the undersigned found no error, as set forth above, as to the ALJ's

determination as to the medical opinions and credibility findings, it follows that there is no error

in the ALJ's RFC.  The RFC adequately incorporates the ALJ's determination as to plaintiff's

limitations.

### E.        Step 5 - Other Work

Finally, plaintiff argues the ALJ erred in his determination at step five that she is

capable of other work in the national economy.  Based on her previous arguments, she contends

the ALJ failed to incorporate all of her limitations in the hypothetical posed to the vocational

expert, the jobs identified by the vocational expert fall outside the limitation to 4 hours of

standing/walking assessed by Dr. Kinnison, and based on the evidence there is no work plaintiff

can perform.

The ALJ may meet his burden under step five of the sequential analysis by

propounding to a vocational expert hypothetical questions based on medical assumptions,

supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole.  See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

Here, as set forth above, the undersigned finds no error in the ALJ's determination of plaintiff's limitations.  The ALJ's determination as to the medical opinions, and the RFC determination based thereon, formed the basis for the hypothetical he posed to the vocational expert.  As the undersigned found no error in the ALJ's treatment of the medical opinions, or the RFC determination, there similarly is no error in the hypothetical used.  The ALJ found, and supported his determination, that plaintiff is capable of performing less than a full range of light work, with limitations in how much she can lift, carry, push and/or pull; is capable of sitting for eight hours in an eight-hour work day so long as she has a sit/stand option and can sit 30-to-40 minutes at a time; can stand and walk six hours in an eight-hour workday so long as she is permitted to change positions; has some postural and manipulative limitations; but has the capacity to receive, understand, remember and carry out simple job instruction, occasionally perform detailed, not complex, job instructions, interact appropriately with others, make work

place judgments and adjust to changes. All of these limitations were posed to the vocational expert in a hypothetical. Based on the hypothetical, the vocational expert identified three jobs such a person could perform. As the hypothetical is supported by substantial evidence, the undersigned finds no error in the step five analysis. The failure to include other limitations is not reversible error.

## IV. CONCLUSION

Based on the foregoing, the undersigned concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, the undersigned recommends that:

      1.    Plaintiff's motion for summary judgment (Doc. 19) be denied;

      2.    Defendant's cross-motion for summary judgment (Doc. 24) be granted; and

      3.    The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 27, 2018

                                                  *Craig M. Kellison*
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE